[No. 18070–7–II.   Division Two.   May 10, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. LEWIS SQUALLY, SR., *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. JOHN S. KALAMA, *Petitioner.*

*Christina C. Berg, Linda J. Whitt, Joan M. Flowerbird,* and *Bill Tobin,* for appellant Squally and petitioner Kalama.

*Bernardean Broadous, Prosecuting Attorney,* and *Kenneth L. Nichols, Deputy,* for respondent.

WIGGINS, J.* — In these consolidated appeals, Lewis Squally, Sr. and John Kalama challenge the subject matter jurisdiction of the Washington State courts over offenses occurring on land on the Nisqually Indian Reservation. The Nisqually Indians consented to state criminal and civil jurisdiction over their reservation land in 1957. Squally's and Kalama's offenses took place on land added to the Nisqually Reservation after 1957. We hold that the

---

*Judge Charles K. Wiggins was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

Nisquallys have not consented to jurisdiction over these after–acquired lands and reverse the convictions.

## FACTS

The Thurston County Prosecuting Attorney charged Squally in superior court with first degree burglary, in violation of RCW 9A.52.020(1)(b). The prosecutor also charged Kalama in district court with carrying a concealed pistol without a permit, in violation of RCW 9.41.050, and with obstructing a public servant, in violation of RCW 9A.76.020(3). Both men were charged for incidents that occurred on Nisqually Reservation land acquired by the Nisqually tribe after 1957.

Squally and Kalama each moved in their respective cases to dismiss the actions for lack of subject matter jurisdiction. Squally and Kalama argued: (1) the State of Washington has only the subject matter jurisdiction that the Nisqually Tribe ceded to it by means of a 1957 tribal resolution; (2) the 1957 resolution asked the State to assume jurisdiction over certain reservation territory identified by legal description; (3) the land upon which the subject criminal offenses were committed was acquired by the Nisqually Tribe after 1957 and was not included in that legal description; and (4) therefore, the Tribe has not authorized the State to exercise jurisdiction over the land where the offenses were committed, and the State lacks such jurisdiction.

In Squally's case, the trial court denied Squally's motion to dismiss and convicted him of second degree burglary. Squally appealed to this court. In Kalama's case, the district court denied Kalama's motion to dismiss the prosecution for lack of subject matter jurisdiction. Kalama sought a writ of certiorari in superior court. The superior court declined to issue the writ, ruling that the State has jurisdiction to prosecute crimes committed by Indians against Indians on the Nisqually Reservation. This court

granted discretionary review and consolidated Kalama's case with Squally's.

## ANALYSIS
### Federal Public Law 280 and State Chapter 240

In 1953 Congress enacted Pub. L. No. 83–280, 67 Stat. 588 (Federal Public Law 280). Federal Public Law 280 granted immediate jurisdiction to five states (California, Minnesota, Nebraska, Oregon, and Wisconsin) over criminal and civil causes of action occurring on Indian land. In some other states, such as Washington, the state constitutions or statutes specifically disclaimed jurisdiction over Indian country.[1] Federal Public Law 280 authorized these states to amend their laws to assume civil and criminal jurisdiction. Federal Public Law 280 also authorized any other state not having jurisdiction to assume civil and criminal jurisdiction at such time and in such manner as the people of the state shall choose. Consent of the Indian tribes was not required.[2]

In response to Federal Public Law 280, Washington enacted Laws of 1957, ch. 240 (State Chapter 240), which obligated the State of Washington to assume, pursuant to gubernatorial proclamation, criminal and civil jurisdiction over Indians and Indian territory when a tribe requested the State to assume such jurisdiction. Former RCW 37.12.020, .040.[3] In October of 1957, the Nisqually Indian

---

[1]The Washington Constitution provides that Indian land shall remain under the absolute jurisdiction and control of the United States Congress unless the United States and Washington consent to a different arrangement. Const. art. XXVI, para. 2.

[2]See State v. Hoffman, 116 Wn.2d 51, 65–66, 804 P.2d 577 (1991), aff'd sub nom. McGinnis v. Blodgett, 67 F.3d 307 (9th Cir. 1995), cert. denied, 116 S. Ct. 1046 (1996).

[3]It was not necessary for Washington State to amend its constitution to remove the disclaimer of jurisdiction. Rather, to depart from the terms of Const. art. XXVI, only the consent of the United States and the people of Washington was necessary. Federal Public Law 280 and Chapter 240, Laws of 1957, evinced the requisite bilateral action. See Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463, 99 S. Ct. 740, 58 L. Ed. 2d 740, reh'g

Community passed a resolution requesting the State of Washington to assume civil and criminal jurisdiction over "the peoples of the Nisqually Indian Community, and all persons being and residing upon the Nisqually Indian Reservation, the same being located in Thurston County, Washington." The resolution included a legal description of the Nisqually Reservation land at that time. The resolution was based explicitly on the Nisquallys' perception that federal and tribal laws had proven "inadequate for the protection of the Nisqually Indian people."

By authority of State Chapter 240, and pursuant to the Nisqually Indians' request, Governor Rosellini proclaimed that "[t]he criminal and civil jurisdiction of the state of Washington shall apply to the Nisqually Indian people, their reservation, territory, lands and country, and all persons being and residing therein." The proclamation did not contain a legal description of Nisqually Reservation land.

In 1963, the Legislature amended RCW Chapter 37.12 with respect to State jurisdiction over Indians and Indian lands. That legislation asserted Washington's jurisdiction over certain enumerated matters without the consent of the tribes.[4] Prospectively, the State could acquire jurisdiction over any other area of law only at the request of the affected Indian tribe. RCW 37.12.021. But RCW 37.12.010, as amended, also provided that Indian tribes who had petitioned for and been made subject to State jurisdiction on or before March 13, 1963, "shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted." Thus, the Nisquallys re-

_denied_, 440 U.S. 940 (1979); _Quinault Tribe of Indians v. Gallagher_, 368 F.2d 648 (9th Cir. 1966), _cert. denied_, 387 U.S. 907 (1967); _Makah Indian Tribe v. State_, 76 Wn.2d 485, 457 P.2d 590 (1969), _appeal dismissed_, 397 U.S. 316 (1970).

[4]The 1963 legislation prospectively limited State jurisdiction over Indians, absent their consent, to: (1) compulsory school attendance; (2) public assistance; (3) domestic relations; (4) mental illness; (5) juvenile delinquency; (6) adoption proceedings; (7) dependent children; and (8) the operation of motor vehicles upon public streets, alleys, roads and highways. RCW 37.12.010. Neither Squally's nor Kalama's case fits any of these categories.

mained subject to state court jurisdiction under their 1957 resolution.

Congress amended Federal Public Law 280 by enacting the Indian Civil Rights Act of 1968 (ICRA), 82 Stat. 78 (codified in 25 U.S.C. §§ 1321–26). The ICRA conditions any further state assumption of criminal or civil jurisdiction over Indians and Indian Country on the consent of the affected tribe.[5] Previously acquired state jurisdiction is not affected by the ICRA's consent requirement.[6]

The Nisqually Indian Reservation has been enlarged twice since the tribe consented to jurisdiction in 1957: approximately 30 acres were added to the reservation in 1979, and approximately six acres were added in 1982. Squally and Kalama committed their crimes on this "after–acquired" land. The Nisqually Indian Tribe has never formally requested the State of Washington to assume jurisdiction over this land.

### Application of State Chapter 240 to the After Acquired Land

██ ██ This jurisdictional issue appears to be one of first impression in Washington.[7] Because RCW 37.12 expressly

---

[5]The ICRA provides:

The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State . . .

25 U.S.C. § 1321. Section 1322 provides for the ceding of civil jurisdiction on the same terms.

[6]See *Hoffman*, 116 Wn.2d at 69; *In re Adoption of Buehl*, 87 Wn.2d 649, 655 n.3, 555 P.2d 1334 (1976); *Thomsen v. King County*, 39 Wn. App. 505, 694 P.2d 40, *review denied*, 103 Wn.2d 1030 (1985).

[7]Interestingly, the Department of Justice, in an internal opinion letter issued in July of 1990, and the U.S. Department of the Interior's Regional Solicitor, in an internal opinion letter issued in June of 1980, arrived at opposite conclusions concerning whether Washington has jurisdiction over after–acquired Indian reservation lands.

does not apply to Indian tribes that previously asked the State to assume jurisdiction, we focus on whether the 1957 Nisqually resolution and gubernatorial proclamation established State jurisdiction over territory acquired by the tribe thereafter. *See* RCW 37.12.010.

The requirement of consent lies at the heart of this case. The Washington Constitution disclaims any jurisdiction over Indian lands absent the consent of Congress.[8] Federal Public Law 280 provided that "the consent of the United States is hereby given" to permit the states to assume civil and criminal jurisdiction over Indian country. The State of Washington could have unilaterally assumed jurisdiction over all Indian country in the State, but instead the Legislature provided for jurisdiction only when the governor received "from the tribal council or other governing body of any Indian tribe, community, band, or group in this state a resolution expressing its desire that its people and lands be subject to the criminal and civil jurisdiction of the state of Washington."[9] Thus, consent was required of Congress, the Legislature, and the Nisqually people.

The Nisqually Community Council gave the consent of the tribe to the assumption of State jurisdiction over specifically described land:

> IT IS RESOLVED that the Nisqually Indian Community hereby requests and expresses its desire that the criminal and civil jurisdiction of the State of Washington be extended to include the peoples of the Nisqually Indian Community, and all persons being and residing upon the Nisqually Indian Reservation, the same being located in Thurston County, Washington, particularly described as follows: [legal description].

Jurisdiction is tied to specific territory, and the Nisquallys granted jurisdiction within specific territory. Absent fur-

---

[8] Wash. Const. art. XXVI, para. 2

[9] LAWS OF 1957, ch. 240, § 2.

ther consent, the State cannot extend its jurisdiction beyond the specific territory described in the Council Resolution.

The State points out that State Chapter 240 required the Governor to issue a proclamation assuming jurisdiction over Indian country after receiving a request from the tribe. The State argues that the Governor's proclamation was broader than the Nisqually Council's resolution, in that the proclamation was not limited to a legal description of specific territory. The proclamation states:

> The criminal and civil jurisdiction of the State of Washington shall apply to the Nisqually Indian people, their reservation, territory, lands and country, and all persons being and residing therein.

The State argues in essence that the proclamation assumed more jurisdiction than the Nisquallys granted, and that the court should give effect to the broader reach of the proclamation.

The State's argument ignores the critical importance of tribal consent in Washington's approach to jurisdiction.[10] State Chapter 240 provided that the tribes must initiate the process of ceding jurisdiction to the State. The Nisqually tribe made such a request. Because Washington could have unilaterally assumed jurisdiction over Indian matters without tribal consent at that time pursuant to Federal Public Law, Section 7, Washington's legislative approach clearly was designed to accommodate the wishes of Washington Indian tribes and to respect their sovereignty. Moreover, while amending its laws concerning jurisdiction over Indians and Indian county, Washington has kept constant the requirement that, other than in eight specified fields of law, the tribe must consent to the State's assumption of jurisdiction over the Indians or their land. RCW 37.12.021. The United States Supreme Court described Washington's approach to Indian jurisdiction:

---

[10]*Bryan v. Itasca County*, 426 U.S. 373, 379, 96 S. Ct. 2102, 48 L. Ed. 2d 710 (1976).

A State that has accepted the jurisdictional offer in Pub L 280 in a way that leaves substantial play for tribal self-government, under a voluntary system of partial jurisdiction that reflects a responsible attempt to accommodate the needs of both Indians and non–Indians within a reservation, has plainly taken action within the terms of the offer made by Congress to the States in 1953. For Congress surely did not deny an option State [such as Washington] the power to condition its offer of full jurisdiction on tribal consent.[11]

As the Nisqually Tribe points out in its amicus curiae brief, if the tribe had intended to include after–acquired property in its 1957 petition for the State to assume jurisdiction, it could have so stated. On the contrary, the resolution conveys no tribal intent to consent to State jurisdiction over after–acquired property.

We also find support in contract law for the defendants' interpretation that the Nisqually resolution did not consent to State jurisdiction over after–acquired tribal lands. The statutory scheme established by Federal Public Law 280 and State Chapter 240, while not a contract, resembles a contract by virtue of the requirement of a request by the Indian tribe—an offer—followed by a gubernatorial proclamation—the acceptance. An acceptance that materially varies the terms of the offer may operate as a counteroffer, but it does not accept the offer and consummate a contract.[12] To the extent that the governor's proclamation varied from the terms of resolution, it did not validly consent to the tribe's request that the State assume jurisdiction and did not create State jurisdiction over after–acquired lands.[13]

As the State points out, ambiguities in statutes, documents, and treaties are to be resolved in favor of assuring

---

[11]*Confederated Bands & Tribes*, 439 U.S. at 499.

[12]*Rorvig v. Douglas*, 123 Wn.2d 854, 858, 873 P.2d 492 (1994).

[13]We do not consider whether any discrepancy between the resolution and the proclamation affects the validity of the State's assumption of jurisdiction over the reservation described in the resolution. This issue is not before us.

tribal sovereignty.[14] The State argues that this principle requires us to defer to the Tribe's supposed desire in 1957 to give the State jurisdiction over after–acquired lands. We believe that the preference for tribal sovereignty requires the opposite conclusion. Rather than accepting the State's speculation about what the Tribe intended in 1957, we think it obvious that requiring tribal consent to a state's assumption of jurisdiction over tribal members and lands accords greater deference to tribal sovereignty. As a leading commentator on federal Indian law has said, "State jurisdiction erodes tribal self–government and federal protection . . . ."[15] Thus, the presumption should be that the tribe did not relinquish jurisdiction to the State over after–acquired lands unless the tribe consented unequivocally.

The State argues further that extending State jurisdiction to after–acquired Nisqually Reservation lands is consistent with Federal Public Law 280's authorization, in Section 7, for states to assume jurisdiction at such time and in such manner as the state shall, by "affirmative legislative action, obligate and bind [itself] to [the] assumption thereof." A closely related argument is that state assumption of jurisdiction in the present case is consistent with Federal Public Law 280's policy of ceding criminal jurisdiction over Indian matters to the states to correct lawlessness on reservations. These arguments are unconvincing.

We must read Federal Public Law 280, Section 7, together with Washington's legislation regarding assumption of jurisdiction over Indians. Section 7 provided that states could assume jurisdiction in any manner decided "by affirmative legislative action." By enacting State Chapter 240, Washington chose to assume criminal and civil jurisdiction of Indian matters only as and when requested by the affected tribe. Because the Nisqually

---

[14]*Bryan*, 426 U.S. at 392–93.

[15]F. Cohen, Handbook of Federal Indian Law 361 (1982 ed.) (citations omitted).

Indian Tribe asked the State to assume jurisdiction over its reservation as legally described, we believe that Washington could assume only the jurisdiction requested, no more. Thus, a finding of no jurisdiction over the Nisquallys' after–acquired property is most consistent with Federal Public Law 280.

We note also that by enacting the ICRA, Congress indicated that it was no longer willing, in 1968, to transfer jurisdiction without the consent of the affected tribe. Although these amendments occurred after the Nisqually Resolution, they signal a more recent Congressional intent to preserve tribal sovereignty.

The State finally contends that a determination that it lacks jurisdiction over after–acquired property would lead to "patchwork" jurisdiction and confuse and impair law enforcement and prosecution efforts. This argument lacks force, however, because such "patchwork" jurisdiction is common in Indian law.[16] In *Washington v. Confederated Bands & Tribes*,[17] the Supreme Court noted that "checkerboard jurisdiction is not novel in Indian law, and does not, as such, violate the Constitution." In that case the Court sanctioned Washington's unilateral assumption of "piecemeal" jurisdiction in RCW 37.12 whereby the State assumed jurisdiction over eight areas of law.

## CONCLUSION

In sum, a fair reading of the Nisqually Resolution, in light of the rule that ambiguities should be interpreted to assure tribal sovereignty, leads to the conclusion that the Tribe asked the State to assume jurisdiction over the Nisqually Reservation only as defined in the legal description contained in the Resolution. The breadth of the gubernato-

---

[16]*Negonsott v. Samuels*, 507 U.S. 99, 113 S. Ct. 1119, 122 L. Ed. 2d 457, 463 (1993).

[17]*Confederated Bands & Tribes*, 439 U.S. at 502–03.

rial proclamation does not alter our conclusion because under State Chapter 240, the governor could assume jurisdiction only as requested by the Tribe. More recent congressional and state legislative policy fully supports our conclusion. The Thurston County courts lacked jurisdiction over these prosecutions.[18]

We reverse the convictions for lack of subject matter jurisdiction and remand for dismissal of the charges.

HOUGHTON, A.C.J., and FLEISHER, J. Pro Tem., concur.

Review granted at 130 Wn.2d 1007 (1996).

---

[18]Squally argues that even if the State of Washington technically had jurisdiction, 18 U.S.C. § 1153, the federal Major Crimes Act, requires that crimes involving Indians be heard in federal court. In light of our holding that Washington courts lack jurisdiction, we need not address this issue.