[No. 64243-5. En Banc.]
Argued February 26, 1997. Decided June 5, 1997.

THE STATE OF WASHINGTON, *Petitioner,* v. LEWIS
SQUALLY, SR., *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. JOHN S.
KALAMA, *Respondent.*

*Bernardean Broadous, Prosecuting Attorney,* and *James C. Powers* and *Kenneth L. Nichols, Deputies,* for petitioner.

*Whitt & Associates,* by *Linda J. Whitt,* for respondent Squally.

*Joan M. Flowerbird,* for respondent Kalama.

*Bill Tobin* and *Christina C. Berg* on behalf of Nisqually Indian Tribe, amicus curiae.

ALEXANDER, J. — In this consolidated appeal, we are called upon to decide but one question: Do the Thurston County District and Superior Courts possess jurisdiction to entertain criminal charges leveled against members of the Nisqually Indian Tribe for offenses that allegedly occurred on reservation lands acquired by the tribe following the tribe's cession of criminal jurisdiction to the State of Washington? We hold that jurisdiction does lie and, consequently, reverse the Court of Appeals.

## I. PROCEDURAL FACTS

### A. *State v. Squally*

Lewis Squally, Sr., an enrolled member of the Nisqually Indian Tribe, was charged in Thurston County Superior Court with one count of first degree burglary. At trial, he was convicted of the lesser offense of second degree burglary. Squally appealed the conviction to Division Two of the Court of Appeals contending, as he did at the trial court, that the superior court lacked jurisdiction to hear the charge against him because the tribe had not explicitly consented to the State's assumption of criminal jurisdiction over the reservation land on which the burglary was committed. At about the same time, Squally was charged in Thurston County District Court with the offense of violating a no contact order. Following the district court's denial of Squally's motion to dismiss for lack of subject matter jurisdiction, Squally filed a petition for writ of certiorari in Thurston County Superior Court. Following the superior court's denial of his petition, Squally sought discretionary review of the superior court's order in the Court of Appeals. The Court of Appeals granted review,

consolidating it with Squally's appeal from his burglary conviction.

## B. *State v. Kalama*

John Kalama, also an enrolled member of the Nisqually Indian Tribe, was charged in Thurston County District Court with the offenses of carrying a concealed pistol without a permit (RCW 9.41.050) and obstructing a law enforcement officer (RCW 9A.76.020). Kalama moved to dismiss these charges, contending that the district court lacked jurisdiction on the same basis asserted by Squally — namely that the tribe had not explicitly consented to the State's assumption of criminal jurisdiction over the land on which the charged offenses allegedly took place. His motion was denied. Kalama then petitioned the Thurston County Superior Court for a writ of certiorari. The superior court denied the petition, concluding that the district court had jurisdiction to hear the charges against him. Kalama then sought discretionary review by Division Two of the Court of Appeals of the superior court's order. The Court of Appeals accepted review of Kalama's case and consolidated it with Squally's appeal and review.

## II. COURT OF APPEALS

The Court of Appeals reversed Squally's burglary conviction and remanded for entry of an order dismissing that charge as well as the district court charges against Squally and Kalama. In doing so, it concluded that "[t]he Thurston County courts lacked jurisdiction over these prosecutions." *State v. Squally*, 81 Wn. App. 685, 696, 915 P.2d 1151, *review granted*, 130 Wn.2d 1007 (1996). The State then sought and obtained review by this court of the decision of the Court of Appeals.

## III. ISSUE PRESENTED

As we have noted above, the issue before us is whether

the Thurston County Superior and District Courts possessed jurisdiction over these cases in which it was alleged that Squally and Kalama, members of the Nisqually Tribe, each committed offenses on reservation land.

## IV. WASHINGTON'S ASSUMPTION OF CRIMINAL JURISDICTION OVER LANDS OF THE NISQUALLY TRIBE

In deciding the issue before us, it is necessary to understand some of the history of the Nisqually Indian Tribe as well as the relationship that has developed over the last century and a half between the United States, the State of Washington, and the Nisqually Tribe. The Nisqually Tribe received recognition from the United States government as early as 1854,[1] however, its reservation was not formally recognized until 1857 when the president of the United States entered an executive order formally establishing the Nisqually Indian Reservation. For most of the next 100 years, jurisdiction over criminal offenses committed by Native Americans on reservation and other Native American lands, including the Nisqually Reservation, resided with the United States Government or the tribe. *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation*, 439 U.S. 463, 470, 489 n.33, 498-99, 99 S. Ct. 740, 58 L. Ed. 2d 740, *reh'g denied*, 440 U.S. 940 (1979).

In 1953, Congress took a significant step toward giving the States of the Union the right to assume jurisdiction over Indian land when it enacted Public Law 280 (codified, as amended, as 18 U.S.C. § 1162). This act gave "[t]he consent of the United States" to Washington and other states "to assume jurisdiction [criminal and civil] at such

---

[1]In that year, the United States, the Nisqually Tribe and other tribes entered into the "Treaty With Nisquallys, &c.," commonly referred to as the Medicine Creek Treaty. *See* 10 Stat. 1132-37 (1854). That treaty, which was confirmed by the Senate of the United States in 1855, governed, among other things, the cession of land by the tribes, payments for the cessions, fishing rights, trade between the tribes and foreign nations, and the eventual establishment of the reservation lands.

time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." Pub. L. No. 280, ch. 505, § 7, 67 Stat. 588, 590 (1953).[2]

In response to the federal act, the Washington Legislature enacted a statute which authorized the State of Washington to assume civil and criminal jurisdiction over "Indians and Indian territory, reservation, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280[)]." LAWS OF 1957, ch. 240, § 1 (later codified as RCW 37.12.021).[3] According to this statute, the State's assumption of jurisdiction was to be effective 60 days after the governor issued a proclamation that jurisdiction had been assumed. In that regard, the statute provided that "the State of Washington shall assume jurisdiction over offenses committed by or against Indians in the *lands prescribed in the proclamation* to the same extent that this state has jurisdiction over offenses committed elsewhere within this state." LAWS OF 1957, ch. 240, § 3 (emphasis added).

Although the federal act did not require Washington to obtain the consent of a tribe prior to assuming criminal jurisdiction over offenses committed on tribal land, Washington's statute provided that the governor must first receive a resolution from a tribe expressing its agree-

---

[2]Section 7 of Public Law 280 was eventually repealed by section 403(b) of Pub. L. No. 90-284, § 403, 82 Stat. 79 (Apr. 11, 1968). The defendants have not argued that the repeal of section 7 affected the tribe's cession of jurisdiction to the State. Significantly, the historical note to 18 U.S.C. § 1162 states that the repeal does not affect any cession of jurisdiction made pursuant to section 7 prior to its repeal.

[3]In 1963, chapter 240 of the LAWS OF 1957 was amended to allow the State to assume nonconsenual civil and criminal jurisdiction over "Indians and Indian territory, reservations, country, and lands within this state." That civil and criminal jurisdiction was limited, however, to eight specific areas of law which did not include general criminal jurisdiction. RCW 37.12.010. The amendment is inapplicable to the case at bar, however, as the Legislature explicitly stated that "Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, LAWS OF 1963 had not been enacted." RCW 37.12.010(8).

ment to state jurisdiction before issuing a proclamation. LAWS OF 1957, ch. 240, § 2 (RCW 37.12.021). Upon receipt of the resolution, the governor was then required to issue "a proclamation to the effect that such jurisdiction shall apply to all Indians and all Indian territory, reservation, country, and lands of the Indian body involved." LAWS OF 1957, ch. 240, § 2 (RCW 37.12.021).

Shortly after the state statute was enacted, the Nisqually Tribe issued a resolution expressing its desire to have the State of Washington assume criminal and civil jurisdiction over the Nisqually Indian people. The resolution stated in pertinent part:

> WHEREAS, the Nisqually Indian people have found the laws of the United States, as applied to Indian territory, and tribal laws, insofar as such can be effectively enforced, to be inadequate for the protection of the Nisqually Indian people, and they therefore desire that the State of Washington assume criminal and civil jurisdiction over peoples residing upon their reservation and territory, now therefore,

> IT IS RESOLVED that the Nisqually Indian Community hereby requests and expresses its desire that the criminal and civil jurisdiction of the State of Washington be extended to include the peoples of the Nisqually Indian Community, and all persons being and residing upon the Nisqually Indian Reservation, the same being located in Thurston County, Washington, particularly described as follows:

> [Legal description.]

Clerk's Papers (Squally) at 21.

Upon receipt of the tribe's resolution, this state's then governor, Albert D. Rosellini, issued a proclamation stating that "[t]he criminal and civil jurisdiction of the State of Washington shall apply to the Nisqually Indian people, their reservation, territory, lands and country, and all persons being and residing therein." Clerk's Papers (Squally) at 20. The governor's proclamation did not

contain a metes and bounds description of the Nisqually Reservation.

## V. POST-CESSION EXPANSION OF NISQUALLY RESERVATION

In 1979, the Nisqually Tribe expanded its reservation by adding approximately 30 acres of land. In 1982, it added six more acres of land to the reservation. At no time material to this action has the Nisqually Tribe requested the State to assume jurisdiction over the reservation land that it acquired in 1979 and 1982. Neither has it requested that its 1957 resolution be modified in any way. The parties agree that the burglary committed by Squally, the other offense allegedly committed by Squally, and the offenses allegedly committed by Kalama occurred on the newly acquired reservation land.

## VI. ANALYSIS

■ Proof of jurisdiction beyond a reasonable doubt is an integral component of the State's burden in every criminal prosecution. *State v. Svenson*, 104 Wn.2d 533, 542, 707 P.2d 120 (1985). In most circumstances, proof that the crime was committed in the state of Washington satisfies the jurisdictional element. *State v. L.J.M.*, 129 Wn.2d 386, 392, 918 P.2d 898 (1996). Ordinarily, it is the State's burden to establish that jurisdiction is appropriate in state court. *L.J.M.*, 129 Wn.2d at 392. Where, as here, however, the State's petition for review raises only the legal issue of whether the district and superior courts have criminal jurisdiction over the newly acquired reservation property; the parties' respective burdens to establish or contest jurisdiction are not at issue. *See State v. Cooper*, 130 Wn.2d 770, 772 n.2, 928 P.2d 406 (1996) (citing *L.J.M.*, 129 Wn.2d 386). Furthermore, because the question of whether Washington's courts have jurisdiction to hear the charges against Squally and Kalama is a question of law, our review of the lower courts' determinations is de novo. *See*

*Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992) (when the underlying facts are undisputed, the trial court's assertion of personal jurisdiction is reviewed de novo); *Joy v. Kaiser Aluminum & Chem. Corp.*, 62 Wn. App. 909, 911, 816 P.2d 90 (1991).

Squally and Kalama each contend that the Thurston County courts lack jurisdiction to hear the charges against them because the Nisqually Tribe did not consent to the State's assumption of criminal jurisdiction over reservation lands that were acquired by the tribe following its cession of criminal jurisdiction to the State of Washington. According to these defendants, because Washington's statute conditioned the State's assumption of jurisdiction upon the tribe's consent, it is the scope of its consent that defines the extent of the State's jurisdiction. They argue that because the 1957 resolution of the Nisqually Tribe contained a precise description of the reservation as it then existed, the State's assumption of criminal jurisdiction was limited to crimes occurring on the reservation lands described in the tribe's resolution.[4]

The State counters that it was the intent of both the State and the Nisqually Tribe in 1957 that the State assume jurisdiction over crimes occurring within the full boundaries of the Nisqually Reservation, regardless of how those boundaries were described in the tribe's resolution or how they might be altered in the future. It points to language in the tribe's resolution and the governor's proclamation, both of which speak in general terms of the State's jurisdiction extending not only over the Nisqually Reservation but also over the Nisqually Indian people, including those "being and residing" on the reservation. The State argues, additionally, that a holding that the

---

[4]Counsel for Squally asserted in oral argument before this court that the legal description set forth in the tribe's 1957 resolution did not describe the entire reservation as it then existed. According to counsel, a portion of the Nisqually Reservation had become part of the Fort Lewis Army Post prior to 1957 with the tribe retaining some degree of control over that property. We decline to consider this assertion because the record contains no information to support it.

State is without jurisdiction over crimes occurring on reservation property acquired after 1957 would be "bad policy and an administrative nightmare" in that it would result in "patchwork jurisdiction — a very confusing state of affairs for law enforcement and criminal prosecution." Br. of Resp't to Court of Appeals at 16, 17.[5]

The Court of Appeals agreed with the defendants' position, holding that the Thurston County courts lacked jurisdiction over the newly acquired property of the Nisqually Reservation. It stated:

> By enacting State Chapter 240, Washington chose to assume criminal and civil jurisdiction of Indian matters only as and when requested by the affected tribe. Because the Nisqually Indian Tribe asked the State to assume jurisdiction over its reservation as legally described, we believe that Washington could assume only the jurisdiction requested, no more.

*Squally*, 81 Wn. App. at 694-95. Although the Court of Appeals took note of the fact that Congress had authorized the State of Washington to unilaterally assume jurisdiction over all Indian country[6] within the state, it concluded that it was significant that this state's Legislature conditioned assumption of jurisdiction upon consent of the tribe. Washington's approach, according to the Court of

---

[5]The trial judge in Squally's superior court case took note of the argument, stating, "Now the argument is . . . that if something happens on those six acres, or . . . 30 acres, that this State Proclamation is no good . . . and that the land is somehow in limbo. I use limbo because prior to being added to the Reservation, it certainly was land in the State of Washington that was subject to criminal and civil jurisdiction in the State of Washington. Now it is argued that somehow, when it was added, taken out of the general land of the State, and placed in the Reservation, that the State somehow lost civil and criminal jurisdiction." It opined that such a result would be "curious." Trial Court's Oral Op. (Squally) at 8.

[6]"Indian country" is defined as: "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C. § 1151.

Appeals, "clearly was designed to accommodate the wishes of the Washington Indian tribes and to respect their sovereignty." *Squally,* 81 Wn. App. at 692. Furthermore, it reasoned that if the tribe had intended to include property acquired after the 1957 resolution "it could have so stated." *Squally,* 81 Wn. App. at 693. The Court of Appeals also concluded that the tribe's resolution was ambiguous and that "a fair reading of the Nisqually Resolution, in light of the rule that ambiguities should be interpreted to assure tribal sovereignty" requires the conclusion that "the tribe asked the State to assume jurisdiction over the Nisqually Reservation only as defined in the legal description contained in the Resolution." *Squally,* 81 Wn. App. at 695.

■ We disagree with the Court of Appeals, being satisfied that the Thurston County courts obtained jurisdiction to hear the charges against Squally and Kalama by virtue of the tribe's cession of civil and criminal jurisdiction to the State in 1957. In our judgment, once the State assumed jurisdiction over crimes occurring on Nisqually Reservation lands and the "Nisqually Indian people," it obtained jurisdiction over the entire Nisqually Reservation including land added to the reservation in the future. Our conclusion is supported by the plain language of our state's statute which provides that "the state of Washington shall assume jurisdiction over offenses committed by or against Indians *in the lands prescribed in the proclamation.*" LAWS OF 1957, ch. 240, § 3 (emphasis added). Governor Rosellini's proclamation, which responded to the tribe's resolution, was very broad and indicated that the State's jurisdiction "shall apply to the Nisqually Indian people, their reservation, territory, lands and country, and all persons being and residing therein." Clerk's Papers (Squally) at 20. Furthermore, it contained no language limiting the assumption of jurisdiction to the described geographical boundaries of the reservation, implying that the State was invoking jurisdiction over the entire reservation, including any lands added to it in the future.

 Even if we were to conclude that the state statute providing for the assumption of state jurisdiction is ambiguous, we would not construe it in a way that would result in unlikely, absurd, or strained consequences. *See Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 317, 884 P.2d 920 (1994). We agree with the State that piecemeal assumption of jurisdiction is a consequence to be avoided. The Court of Appeals dismissed this argument on the grounds that "checkerboard jurisdiction" is not unconstitutional.[7] *Squally*, 81 Wn. App. at 695 (citing *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation*, 439 U.S. 463, 460, 99 S. Ct. 740, 58 L. Ed. 2d 740, *reh'g denied*, 440 U.S. 940 (1979)). While a checkerboard pattern of jurisdiction may pass constitutional muster, it is not a condition that can be said to promote the welfare of members of the Nisqually Tribe or the citizens of the state of Washington. In short, it is an absurd consequence and one that we do not believe was intended by the Legislature.

 Although we agree with the general rule identified by the Court of Appeals that ambiguities in some statutes and treaties should be resolved in a way that ensures tribal sovereignty, we note that this rule was developed to compensate tribes for their lack of bargaining power and knowledge of the language in which the treaties were written. *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675-76, 99 S. Ct. 3055, 61 L. Ed. 2d 823 (1979). That concern is not present here, however, as the resolution issued by the Nisqually Tribe giving its consent to state jurisdiction in 1957 was not a result of bargaining or negotiations between the tribe and the State. The rule cited by the Court of Appeals, therefore, has no application.

---

[7]In discussing the constitutionality of "checkerboard jurisdiction," the Supreme Court focused its analysis on those tribes that had not consented to state jurisdiction stating, "we turn, finally, to the question whether the 'checkerboard' pattern of jurisdiction applicable on the reservations of *nonconsenting* tribes is on its face invalid under the Equal Protection Clause of the Fourteenth Amendment." *Confederated Bands & Tribes*, 439 U.S. at 499 (emphasis added).

Finally, even if we were to assume that it is the resolution of the tribe consenting to the State's assumption of criminal jurisdiction which establishes the extent of the State's jurisdiction, rather than the governor's proclamation, the result we reach would be the same. That is so because the tribe's resolution is broad enough to provide the Thurston County courts with jurisdiction. As noted above, it explicitly states that the tribe is desirous of having the State assume jurisdiction over "the peoples of the Nisqually Indian Community, and all persons being and residing upon the Nisqually Indian Reservation." Clerk's Papers (Squally) at 21. Under the resolution, the specific geographic location of the alleged offense is wholly irrelevant.

We note, finally, that the result we reach here is consistent with a recent letter opinion of the United States Department of Justice. In that letter, the Department indicated that "[i]t is our opinion that the State of Washington may exercise jurisdiction over the entire reservation pursuant to the terms of Public Law 280." Clerk's Papers (Squally) at 48. While that opinion is not binding on this court, we believe it is significant that the Department relied on the fact that the Nisqually Tribe "asked that the State assume jurisdiction over the entire reservation and not just bits and pieces of it." Clerk's Papers (Squally) at 51. Also important to the Department's conclusion was the fact that Governor Rosellini's proclamation did not contain a legal description of the Nisqually Reservation. This, according to the Department, leads to the conclusion that "all land subject to authority of the tribe falls under State jurisdiction regardless of whether or not part of it was acquired subsequent to this Proclamation." Clerk's Papers (Squally) at 52.

## VII. CONCLUSION

For the reasons stated above, we conclude that the Thurston County District and Superior Courts had jurisdiction to hear the charges against Squally and Kalama. When

the Nisqually Tribe ceded civil and criminal jurisdiction to the State in 1957, the State acquired jurisdiction over the entire Nisqually Reservation, including land acquired by the tribe thereafter.

Reversed and remanded.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE, and SANDERS, JJ., concur.