918 P.2d 898 (1996)
129 Wash.2d 386
The STATE of Washington, Petitioner,
v.
L.J.M., Respondent.
No. 63367-3.
Supreme Court of Washington, En Banc.
Argued March 7, 1996.
Decided June 20, 1996.
*899 Russell D. Hauge, Kitsap County Prosecutor, Pamela B. Loginsky, Deputy, Port Orchard, for Washington Ass'n of Pros. Attorneys.
Richard L. Weber, Okanogan County Prosecutor, Okanogan, for petitioner.
Scot D. Stuart and Law Office of Scot D. Stuart, Okanogan, Barker & Howard, Thomas E. Weaver, Jr., Wenatchee, for respondent.
ALEXANDER, Justice.
The principal question presented by this appeal is whether, in a case where it is undisputed that the site of an alleged crime was within the external geographic boundaries of an Indian reservation, and the defendant identifies himself at trial as a member of a recognized Indian tribe, the State's burden of proof on the issue of jurisdiction is greater than it would otherwise be. In addition, we must determine, regardless of what level of burden the State must carry on that issue, whether that burden was satisfied.
In this case, the Okanogan County Superior Court concluded, as a matter of law, that the State met its burden of proving jurisdiction merely by showing that the crime that was alleged to have been committed by L.J.M. occurred in Omak, a city within Okanogan County, state of Washington. The Court of Appeals, Division Three, disagreed and, consequently, reversed L.J.M.'s conviction. It also ordered dismissal of the charge against him, concluding that the double jeopardy clause of the United States Constitution barred retrial of L.J.M.
*900 We reverse the Court of Appeals, holding that in the absence of evidence that constitutes a direct challenge to the State's prima facie showing of state court jurisdiction, the State's burden of proving jurisdiction remained that of showing only that the location of the incident giving rise to L.J.M.'s conviction was within this state. We conclude, additionally, that the State successfully met this burden. We, therefore, reinstate L.J.M.'s conviction and sentence.
In May of 1992, eight-year-old H.M. revealed to his mother, S.C., that his father, L.J.M., had raped him sometime prior to Christmas 1987. The incident was alleged to have occurred at the family home in the eastern portion of the city of Omak, Washington, an area of that city that the parties agree is within the external geographic boundaries of the Colville Indian Reservation.[1]
S.C. contacted the Child Protective Services for the Colville tribe regarding the allegations H.M. made against his father. The staff of that agency advised her to contact the Federal Bureau of Investigation because some crimes committed on tribal lands may only be prosecuted in federal court. See 18 U.S.C. §§ 1151-53. Consequently, FBI Agent Jack Davis conducted an investigation into the matter. He interviewed H.M. and L.J.M. separately regarding the incident, and eventually obtained L.J.M.'s written confession. Davis also satisfied himself that, although the family home was within the geographic boundaries of the Colville reservation, it was located on "fee title" property.[2] Because offenses that occur on fee title property within the Colville reservation do not fall within the jurisdiction of federal courts, the Okanogan County Prosecuting Attorney charged L.J.M. in Okanogan County Superior Court with rape of a child in the first degree.[3]
Shortly before trial, a hearing was conducted for the purpose of determining (a) whether H.M., then nine years old, was competent to testify, and (b) the admissibility, under the child hearsay statute, RCW 9A.44.120, of statements H.M. made to S.C. and FBI Agent Davis regarding the alleged rape.[4] H.M., S.C., and Davis testified at that hearing, after which the trial court concluded that H.M. was competent to testify, and that H.M.'s statements to S.C. and Davis were admissible at trial.
H.M. testified at trial. L.J.M.'s trial counsel moved to strike H.M.'s testimony, and in the alternative, for a mistrial, arguing that the testimony was contradictory and inconclusive, and demonstrated that H.M. was incompetent to testify. The trial court denied L.J.M.'s motions. Testimony was then received *901 regarding L.J.M.'s confession, and the statements H.M. made to S.C. and Agent Davis about the incident, including the fact that the alleged incident occurred at the family home in East Omak.
L.J.M. testified at trial, and said that he had never had sexual relations with H.M. He indicated that he agreed to sign a confession only because he believed that it would cause the issue to "get into court because I wanted to come to court and have my day in court." Report of Proceedings (RP) at 184. L.J.M. also testified that he lived "on the Spokane Indian Reservation," and responded "yes" when asked by defense counsel whether he was a member of the Colville Confederated Indian Tribe. RP at 173.
After the State and the defense had rested, L.J.M. moved for dismissal of the charge for what he claimed was the State's failure to prove jurisdiction. In that regard, he argued that "[t]here has been absolutely no proof that [the family home] is not a part of the Colville Indian Reservation. The burden is on the State ... not upon the defense to prove ... that the State does not have jurisdiction." RP at 225. Instead of granting L.J.M.'s motion, the trial court allowed the State to reopen its case to present, outside the presence of the jury, testimony relating to the jurisdiction of the superior court. The trial court heard Agent Davis testify, over L.J.M.'s objections, regarding inquiries Davis made that led to his determination that H.M.'s family home was on "fee title" property. RP at 234-45. Without permitting either side to obtain additional evidence or locate an expert who could testify as to the status of the title to the property in question,[5] the trial court denied L.J.M.'s motion to dismiss, concluding that
"[i]f the Court had even the slightest doubt or there was the slightest shred of evidence or question, as reluctant as I am, I would continue the matter to hear this evidence and bring the jury back. But since there is no such evidence, the motion to dismiss is denied."
RP at 246.[6] The jury found L.J.M. guilty of rape of a child in the first degree.
L.J.M. appealed his conviction to the Court of Appeals, Division Three, assigning error to the trial court's determinations that the Okanogan County Superior Court had jurisdiction, and that H.M. was competent to testify. The Court of Appeals, reasoning that whether the home in which the crime allegedly occurred is on "fee property is neither a contested nor uncontested fact[, i]t is not a fact at all because it comes from inadmissible hearsay," concluded that the trial court erred in ruling "as a matter of law that jurisdiction existed because the uncontested facts did not overwhelmingly support jurisdiction." State v. L.J.M., 79 Wash.App. 133, 143, 900 P.2d 1119 (relying in part on State v. Lane, 112 Wash.2d 464, 771 P.2d 1150 (1989)), review granted, 128 Wash.2d 1002, 907 P.2d 297 (1995). The Court of Appeals also agreed with L.J.M.'s contention that "when reversal is required because of a failure of proof, double jeopardy principles bar retrial," and dismissed the charge against him. L.J.M., 79 Wash.App. at 143, 900 P.2d 1119. Having resolved the case in this manner, the Court of Appeals found it unnecessary to address L.J.M.'s assignment of error regarding H.M.'s competency to testify.
The State petitioned this court for review, arguing that its burden of proof on the issue of jurisdiction was merely to show that the alleged crime occurred within the state of Washington, a burden it claims that it satisfied.
*902 The State also contended that even if it failed to prove jurisdiction beyond a reasonable doubt, dismissal was not the appropriate remedy. We granted review.

I. Jurisdiction
The parties agree that the State bears the burden to show that jurisdiction properly lies in state court. Ordinarily, the State meets this burden by presenting evidence that any or all of the essential elements of the alleged offense occurred "in the state." RCW 9A.04.030(1). See also State v. Lane, 112 Wash.2d at 470-71, 771 P.2d 1150. The issue we are confronted with here is whether the State has an enhanced burden in a case such as this, where it is undisputed that the site of the alleged crime is in a portion of a Washington city that is within the external, geographic boundaries of an Indian reservation, and there is testimony that the defendant is a member of a recognized Indian tribe.
The State argues that, in the absence of evidence establishing federal or tribal jurisdiction over the defendant for the crime charged, its burden is merely to show "that an element of the offense happened within the boundaries of the State of Washington," a burden it satisfied by presenting testimony that the alleged crime was committed in the family home in Omak, Washington. Pet. for Review at 16-17. It asserts, further, that the Court of Appeals's decision imposes a burden on the State that it should not have to bearto "disprove tribal/federal jurisdiction in order to establish state jurisdiction." Pet. for Review at 5. It urges this court to reject that decision and adopt the following rule:
If the defendant challenges the state's jurisdiction, he [has] the burden of presenting some facts to dispute state jurisdiction. If the defendant is able to demonstrate a legitimate factual dispute, it would then become a jury question, requiring proof beyond a reasonable doubt.
Pet. for Review at 17.
L.J.M. contends that the State mischaracterizes the issue, asserting that it is not his position that the State had to disprove federal jurisdiction in order to prove state jurisdiction. Rather, L.J.M. says that by introducing some evidence showing "Indian lineage and the existence of an alternative forum," he raised a sufficient question regarding jurisdiction so as to produce a reasonable doubt that the charge was brought in the correct forum. Supplemental Br. of Resp't at 6. Specifically, L.J.M. contends that the testimony of H.M. and Agent Davis was sufficient to raise a question as to whether the location of the alleged crime was tribal land, and that his testimony established his Indian lineage. This quantum of evidence, he argues, casts some doubt on the State's prima facie showing of jurisdiction, and because the State did not come forth with additional, competent evidence to overcome this doubt, it failed to satisfy its burden of proof. Supplemental Br. of Resp't at 6.
The Washington Association of Prosecuting Attorneys (WAPA) appeared as amicus curiae, and argued that in order to elevate the State's burden of proof with respect to jurisdiction, a defendant must come forward with more than an assertion that he or she is a tribal member, and a suggestion that the site of an alleged crime may be within tribal jurisdictional boundaries. It contends that a defendant has the burden of establishing, by a preponderance of the evidence, Indian status, which removes him or her from being subject to state criminal law jurisdiction. Br. of Amicus Curiae at 3-5. WAPA supports this position by arguing that the burden to produce evidence of Indian status may be equated to the burden that is imposed on defendants to establish other affirmative defenses that are "uniquely known to the defendant," such as duress, unwitting possession, avoidance of adult court jurisdiction, and treaty rights. Br. of Amicus Curiae at 7. See generally State v. Riker, 123 Wash.2d 351, 366, 869 P.2d 43 (1994).
In our view, the State is correct in contending that it does not acquire a higher burden of proof on jurisdiction unless the totality of the evidence before the trial court causes it to reasonably question the State's prima facie showing that jurisdiction exists simply because the site of the alleged crime *903 is within the state of Washington. The amount of evidence that would cause a court to reasonably question whether jurisdiction properly lies in state court, in our judgment, is similar to that which a defendant must present when raising an affirmative defense of self-defense. In such cases "the amount of evidence necessary to create a reasonable doubt in the minds of the jurors on [self-defense]... need only be some evidence, admitted in the case from whatever source to raise the issue of self-defense." State v. McCullum, 98 Wash.2d 484, 488, 500, 656 P.2d 1064 (1983) (emphasis added). Applying such a rule in this context also avoids a potential constitutional problem inherent in the position WAPA advances to the effect that the defendant must establish his or her Indian status by a preponderance of the evidence. See State v. Camara, 113 Wash.2d 631, 638, 781 P.2d 483 (1989) (citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (constitutional error results if the burden of proof on a necessary element of the crime shifts to the criminal defendant)). This burden, which the Court of Appeals aptly called a "burden of contesting," does not require a defendant to persuade the trial court that state jurisdiction is improper. L.J.M., 79 Wash.App. at 141, 900 P.2d 1119. Rather, it requires only that the defendant point to evidence that has been produced and presented to the court, which, if true, would be sufficient to defeat state jurisdiction.[7]
Here, in order to meet this burden, L.J.M. needed only to point to evidence that the alleged crime occurred on land that was within the jurisdictional, as well as the geographical, boundaries of the Colville Indian Tribe, and that he met the requirements for the tribe's extension of personal jurisdiction over him under the Indian Reservation Criminal Jurisdiction Retrocession Act and 18 U.S.C. §§ 1151-53. Viewing the evidence in this case under the test we have enunciated, we hold that the Court of Appeals was incorrect in concluding that L.J.M. met his "`burden of contesting'" the State's assertion of state court jurisdiction. See L.J.M., 79 Wash.App. at 144, 900 P.2d 1119. We reach that conclusion because there was no evidence before the trial court that would cause it to doubt the State's assertion of jurisdiction based on its showing that the site of the alleged crime was within the state. While it is undisputed that the location of the alleged crime was within the geographic boundaries of the Colville Indian Reservation, no evidence had been produced which could, assuming its truth, show that the alleged crime occurred on trust property, thus bringing the case within the jurisdictional boundaries of the Colville Indian Tribe. The failure to produce or point to evidence of tribal jurisdiction is sufficient, alone, to defeat L.J.M.'s contention that the State failed to prove state court jurisdiction, because his status as an Indian is irrelevant on the question of jurisdiction if the site of the alleged crime is not within tribal or federal jurisdiction.
Even assuming, however, that there was sufficient evidence that the site of the alleged crime was within tribal or federal jurisdiction, L.J.M. still fails to meet his burden of contesting state court jurisdiction. This is so because, in his attempt to show Indian status for the purpose of tribal criminal jurisdiction, L.J.M. points only to the fact that he is a member of the Colville Indian Tribe. As we have discussed above, such an assertion, even if true, does not defeat state jurisdiction because tribal membership alone is not necessarily adequate to establish Indian status for the purposes of RCW 37.12 and 18 U.S.C. §§ 1151-53.
*904 In sum, L.J.M. failed to successfully raise a doubt on the issue of state jurisdiction. The State's burden to prove jurisdiction, therefore, remained unchanged, and it could rely on its showing that the alleged crime occurred in Omak, a city in Washington, to establish that the case fell within the jurisdiction of the Okanogan County Superior Court.
L.J.M. also asserts that the trial court erred in deciding the issue of jurisdiction as a matter of law, contending that the question should have been submitted as a question of fact for the jury. We disagree. Because there was no dispute as to the location of the alleged crime, there was no factual matter for the jury to decide that had a bearing on the trial court's jurisdiction. The only question before the trial court in that regard was whether or not the location of the alleged crime was Indian country, as defined in 18 U.S.C. §§ 1151-53. If not, then jurisdiction is vested in state court. That issue being purely legal, it, therefore, was within the authority of the trial court to decide. United States v. Sohappy, 770 F.2d 816, 822 n. 6 (9th Cir.1985) (whether the site of an offense is in Indian country is for the court alone), cert. denied, 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986). See also United States v. Gipe, 672 F.2d 777, 779 (9th Cir.1982) (where the exercise of federal jurisdiction over a specific geographic area is necessary to vest jurisdiction, the court may determine, as a matter of law, the jurisdiction over the area, even when the "locus of the offense within that area is an issue for the trier of fact.")
Because this case is resolved by our conclusion that the defendant's failure to present sufficient evidence to adequately raise a question as to the validity of the State's prima facie showing of state jurisdiction, we need not address L.J.M.'s other contentions that the Court of Appeals erred in ruling that the trial court's decision on jurisdiction was invalid because it was based on impermissible hearsay, and that the double jeopardy clause of the United States Constitution barred his retrial.

II. Witness Competency
Because the Court of Appeals disposed of the case on jurisdictional grounds, it did not address L.J.M.'s other assignment of error, an assertion that the trial court erred in holding that H.M. was competent to testify, and in refusing to grant L.J.M.'s motion for a mistrial after H.M. testified at trial. L.J.M. urges, in the event that this court should do other than affirm the Court of Appeals in all respect, that remand to the Court of Appeals is necessary for consideration of L.J.M.'s second assignment of error.
While our review is generally limited to questions that have been presented to and addressed by the Court of Appeals, State v. Cunningham, 93 Wash.2d 823, 837-38, 613 P.2d 1139 (1980), we may consider an issue included in the record and discussed in the briefs which is necessary to decide the case on the merits, even though review was not granted with respect to that issue. State ex rel. Nugent v. Lewis, 93 Wash.2d 80, 83, 605 P.2d 1265 (1980). Here, the issue of witness competency was a point of controversy before the Court of Appeals, and, as a result, was adequately addressed by the parties in their respective briefs to that court.
L.J.M. contends that the trial court abused its discretion in concluding that H.M. was competent to testify. Although the trial court observed at the competency hearing that H.M. was shy, reserved, and a reluctant witness, it nevertheless found that "it was clear that [H.M.] does understand the obligation to speak the truth." RP at 60. In reaching that conclusion, the trial court stated H.M. may "not have the same descriptive vocabulary that an adult would have, but it's sufficient to be able to convey to the jury his representations about what happened and for the jury to fairly evaluate the matter." RP at 62. We are satisfied, after reviewing the record, that the trial court adequately weighed the evidence regarding H.M.'s competency at the hearing, and did not manifestly abuse its discretion in concluding that H.M. was competent to testify.
L.J.M. also asserts that the trial court erred in refusing to grant his motion for a mistrial after H.M. testified at trial.
*905 He argues in that regard that H.M.'s testimony demonstrated that he was not competent to testify. We disagree. When H.M. subsequently appeared at trial, the substance and demeanor of his testimony was neither significantly less forthcoming than it was at the pretrial hearing, nor was it surprisingly more detailed, polished, or relaxed. We are thus satisfied that there was nothing in H.M.'s testimony at trial that would necessitate the reversal of the earlier determination that H.M. was competent to testify. Because ordering a mistrial would have been appropriate only if the trial court had erred in its earlier ruling that H.M. was competent to testify, the trial court's refusal to grant L.J.M.'s motion for a mistrial was not error.

III. Conclusion
We reverse the decision of the Court of Appeals and reinstate the conviction and sentence entered by the trial court.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] In an Affidavit for Probable Cause filed on the same date as the Information was filed, the State alleged that the investigation into this case was prompted by "complaints of child sexual abuse on the Colville Indian Reservation." Clerk's Papers at 3.
[2] The Indian Reservation Criminal Jurisdiction Retrocession Act provides that the Colville Indian Tribe shall have "criminal jurisdiction over Indians for acts occurring on tribal lands or allotted lands within the ... Colville Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States." RCW 37.12.100. The retrocession act does not, however, confer jurisdiction to the tribe for acts occurring on "fee title property." RCW 37.12.100. See also State v. Hoffman, 116 Wash.2d 51, 67-71, 804 P.2d 577 (1991). In this context, fee title property is real estate that, although previously held by, or in trust for, the Colville Confederate Tribe, it no longer retains such a designation and is now owned by persons or entities other than the Indian tribe, and the owner is free to sell the land without restriction by the federal government as trustee.
[3] Rape of a child in the first degree is "sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073.
[4] RCW 9A.44.120 provides, in relevant part, as follows:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another..., not otherwise admissible by statute or court rule, is admissible in evidence in ... criminal proceedings... in the courts of the state of Washington if:
"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
"(2) The child ...
"(a) Testifies at the proceedings."
[5] See RP at 240, 245, 250-51.
[6] It is apparent from the record that it is common knowledge within the legal community of Okanogan County that land lying within the geographic boundaries of the Colville Indian Reservation is not necessarily within the exclusive criminal jurisdiction of tribal or federal court, at least with respect to the commission of certain offenses. See, e.g., RP at 225, 228, 234-36. See also Indian Reservation Criminal Jurisdiction Retrocession Act, supra note 2. The fact that a dichotomy of jurisdiction exists within the geographic boundaries of the Colville Indian Reservation is a matter of which the trial court could have taken judicial notice. See ER 201(b), which permits a court to take judicial notice of facts that are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
[7] Division One of the Court of Appeals has recently employed this rule in another case involving a challenge to state jurisdiction. In that case, as here, the question of "whether the State has criminal jurisdiction turn[ed] on whether the property is trust land ... for purposes of 18 U.S.C. § 1151, 1153." State v. Cooper, 81 Wash. App. 36, 42, 912 P.2d 1075 (1996). In that case, the Court of Appeals determined that the defendant had "set forth the factual basis for this contention" that the property on which the crime was alleged to have occurred was not within State court jurisdiction. The Court of Appeals dismissed the charge without prejudice, concluding that the defendant had satisfied his burden of contesting jurisdiction, and the State failed in "proving beyond a reasonable doubt that jurisdiction does in fact rest with Washington courts." Cooper, 81 Wash.App. at 41, 42, 912 P.2d 1075 (citing L.J.M., 79 Wash.App. at 136, 141-42, 900 P.2d 1119).