[No. 18479-0-III. Division Three. January 18, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH DANIELS, *Appellant*.

---

[3] *See, e.g., Yancovich v. Cavanaugh Lumber Co.*, 20 Wn. App. 347, 348, 581 P.2d 1057 (1978); *Heron v. Gaylor*, 46 N.M. 230, 126 P.2d 295, 296-97 (1942).

272

*Aaron F. Dalan* and *Scot D. Stuart*, for appellant.

*Rick Weber, Prosecuting Attorney*, and *Dale L. Lehrman, Deputy*, for respondent.

BROWN, J. — Keith Daniels pleaded guilty to attempted first degree theft committed on Colville tribal land. A Canadian citizen and Indian claiming affiliation with a federally recognized Indian tribe, he argues on appeal that the Okanogan County trial court erred by denying his motion to dismiss for lack of jurisdiction. We adopt an analytical framework and affirm because Mr. Daniels did not meet his burden to contest jurisdiction with sufficient proof of connection to a federally recognized Indian tribe.

## FACTS

Mr. Daniels moved to dismiss an October 1998 first degree robbery prosecution against him in Okanogan County due to lack of jurisdiction because he is an Indian. Mr. Daniels is a Canadian citizen and a member of the Sturgeon Lake First Nation. The State conceded the crime occurred on Colville tribal land and Mr. Daniels' Canadian Indian status, but successfully contested jurisdiction at the trial court after arguing he did not belong to a United States recognized tribe.

In January 1999, Mr. Daniels said his grandparents were from Fort Totten, North Dakota. He initially testified his people descended from Sitting Bull of the Sioux Nation. He was uncertain if relatives still existed in North Dakota. Mr. Daniels argues now his "father's people followed Sitting Bull into Canada." At the time of the alleged crime, Mr. Daniels said he had resided with the Colvilles about a

month and received commodities from them. Mr. Daniels admitted he had not received any documents or benefits from any United States tribe or the Bureau of Indian Affairs (BIA).

When first denying Mr. Daniels' dismissal motion, the trial court noted the lack of evidence linking Mr. Daniels to a specific United States tribe in the federal register. But, the trial court did invite Mr. Daniels to present additional evidence. In March 1999, Mr. Daniels produced the family tree of his uncle, Cyrus Standing. Mr. Daniels' counsel argued her search led to the Aberdeen Band in North Dakota. She was told Mr. Standing led an unsuccessful attempt by Canadian Indians to enroll in the Aberdeen Band in 1973, done in order to share in a monetary settlement with the United States government. The trial court noted Mr. Daniels had not produced documentary evidence showing enrollment or affiliation in a federally recognized tribe and again denied his motion.

Eventually, pursuant to a plea agreement, Mr. Daniels pleaded guilty to attempted first degree theft. After sentencing, Mr. Daniels filed this appeal.

## ISSUE

Did the trial court err when denying Mr. Daniels' dismissal motion and concluding Mr. Daniels, a Canadian Indian, failed in his burden of contesting state court criminal jurisdiction under the applicable state and federal retrocession laws by not producing sufficient evidence of the necessary connection to a United States federally recognized Indian tribe by enrollment or affiliation?

## ANALYSIS

Jurisdiction is a question of law reviewed de novo. *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997). Generally, the State bears the burden of proving its jurisdiction. *State v. L.J.M.*, 129 Wn.2d 386, 392, 918 P.2d 898

(1996). "Ordinarily, the State meets this burden by presenting evidence that any or all of the essential elements of the alleged offense occurred in 'the state.'" *L.J.M.*, 129 Wn.2d at 392 (citing RCW 9A.04.030(1); *State v. Lane*, 112 Wn.2d 464, 470-71, 771 P.2d 1150 (1989)).

The State "does not acquire a higher burden of proof on jurisdiction unless the totality of the evidence before the trial court causes it to reasonably question the State's prima facie showing that jurisdiction exists simply because the site of the alleged crime is within the state of Washington." *L.J.M.*, 129 Wn.2d at 394. The "burden of contesting" jurisdiction "requires only that the defendant point to evidence that has been produced and presented to the court, which, if true, would be sufficient to defeat state jurisdiction." *L.J.M.*, 129 Wn.2d at 395 (footnote omitted). Mr. Daniels contests jurisdiction.

> Here, in order to meet this burden, [Mr. Daniels] needed only to point to evidence that the alleged crime occurred on land that was within the jurisdictional, as well as the geographical, boundaries of the Colville Indian Tribe, and that he met the requirements for the tribe's extension of personal jurisdiction over him under the Indian Reservation Criminal Jurisdiction Retrocession Act and 18 U.S.C. §§ 1151-53.

*L.J.M.*, 129 Wn.2d at 395.

The State makes three important concessions. First, the State agrees jurisdiction is properly before us despite Mr. Daniels' guilty plea. *Wesley v. Schneckloth*, 55 Wn.2d 90, 93, 346 P.2d 658 (1959). Second, the State agrees the criminal act took place in "Indian country" as defined by federal statute. 18 U.S.C. § 1151. Third, the State agrees *if* Mr. Daniels is an "Indian" for jurisdiction purposes, then jurisdiction would be exclusively federal. 18 U.S.C. § 1153(a); *State v. Hoffman*, 116 Wn.2d 51, 68, 804 P.2d 577 (1991). Thus, the determinative question is whether Mr. Daniels is an Indian.

Regarding jurisdiction on tribal land, 25 U.S.C. § 1323 authorizes states to effectuate retrocession of criminal and

civil jurisdiction to the United States. Washington's retrocession statute partly states:

> It is the intent of the legislature to authorize a procedure for the retrocession, to the . . . Colville Confederated Tribes of Washington and the United States, of criminal jurisdiction over Indians for acts occurring on tribal lands or allotted lands within the . . . Colville Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States.

RCW 37.12.100.

The practical effect of retrocession is that the State partially surrendered to the Colville Tribe and the United States criminal jurisdiction over Indians for acts committed on the Colville Reservation. *Hoffman,* 116 Wn.2d at 69-70; *see also* Robert J. McCarthy, *Native Justice: A Look at Tribal Court Jurisdiction in Washington State*, WASH. STATE BAR NEWS, Aug. 1999, at 38 n.33. The State retains jurisdiction over "non-Indians" and "fee title property" falling within the reservation. RCW 37.12.100; *L.J.M.*, 129 Wn.2d at 389 n.2.

Moreover, with regard to certain crimes committed by Indians on reservations, the Indian Major Crimes Act (IMCA), 18 U.S.C. § 1153, partly states:

> (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, . . . robbery . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

> (b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

As noted, Mr. Daniels pleaded guilty to attempted theft, a crime not covered under the IMCA. Generally, a federal

court does not have jurisdiction to convict an Indian for uncovered crimes. See *Kills Crow v. United States*, 451 F.2d 323, 326-27 (8th Cir. 1971) (reasoning Congress did not intend IMCA to extend federal jurisdiction to all Indian offenses, thus no lesser included offense instruction is required if the lesser crime falls outside IMCA). However, the plain language of RCW 37.12.100 does not seem to limit the scope of criminal jurisdiction transferred from the State to the Tribe and United States. Whether jurisdiction over an attempted theft charge in Washington has been transferred to federal or tribal court is undecided. Nevertheless, without deciding, we assume it may be because our focus remains whether Mr. Daniels is an Indian for purposes of federal criminal jurisdiction. Although the State concedes Mr. Daniels' status as a Canadian Indian, it argues his proof of affiliation with a federally recognized United States tribe is insufficient to avoid state court criminal jurisdiction.

The Washington retrocession statute does not define "Indian." Neither does the IMCA. But, the Indian Civil Rights Act defines an Indian as merely "any person who would be subject to the jurisdiction of the United States as an Indian" under the IMCA. 25 U.S.C. § 1301(4).

Washington courts have provided little guidance on this issue. Our Supreme Court held that the State had criminal jurisdiction over a Canadian Indian charged with carnal knowledge pursuant to chapter 37.12 RCW. *State v. Pierre*, 66 Wn.2d 703, 703-04, 404 P.2d 788 (1965). *Pierre* is not controlling for two reasons. First, it is a preretrocession case; at that time the State had criminal and civil jurisdiction over Indians and Indian territory within Washington. *Id.* at 703-04; *see also Hoffman*, 116 Wn.2d at 66-68; RCW 37.12.010. Second, the nationality and affiliation of the defendant Indian was not a disputed issue; the *Pierre* court grounded its holding on the situs of the crime within the Puyallup reservation.

More recently, Division One of this court discussed the status of a Canadian Indian. *State v. Dennis*, 67 Wn. App.

863, 840 P.2d 909 (1992). In *Dennis*, the defendant, a member of the Nootka tribe of British Columbia, persuaded the superior court to dismiss State assault charges on the grounds that he was an "Indian" subject to federal jurisdiction under the IMCA. *Id.* at 864. The State did not appeal, and the appeal deadline lapsed. *Id.* Then, when indicted under the IMCA, the defendant apparently persuaded the federal district court to dismiss the indictment on the grounds that, as a Canadian Indian, he was *not* an "Indian" for purposes of the IMCA. *Dennis*, 67 Wn. App. at 864. Pursuant to the State's CrR 7.8(b) motion, the superior court reinstated the prosecution it had earlier dismissed.

Division One reversed, reasoning the circumstances did not warrant CrR 7.8(b) relief. *Dennis*, 67 Wn. App. at 865-66. Nevertheless, the *Dennis* court alluded in dictum to "the complex federal law concerning federal jurisdiction over Indians," and termed the superior court's initial dismissal for lack of jurisdiction a "mistake." *Id.* at 865. Like *Pierre*, *Dennis* is dictum without analysis. Moreover, *Dennis* did not address chapter 37.12 RCW.

Our Supreme Court in dictum stated a bare allegation of tribal membership alone was not necessarily adequate to establish Indian status for purposes of chapter 37.12 RCW and 18 U.S.C. §§ 1151-1153. *State v. L.J.M.*, 129 Wn.2d 386, 396, 918 P.2d 898 (1996). But the *L.J.M.* dictum did not address the issue of membership in a Canadian tribe.

By contrast, Federal courts have grappled with the Indian jurisdiction question for over 150 years. In a case of a white defendant who claimed to be a Cherokee by adoption, the United States Supreme Court developed certain early rules in rejecting his claim. See *United States v. Rogers*, 45 U.S. (4 How.) 567, 573, 11 L. Ed. 1105 (1846).

Courts interpreting *Rogers* have articulated a two-part test for determining if a defendant is an Indian for purposes of jurisdiction: "(1) the degree of Indian blood; and (2) tribal or governmental recognition as an Indian." *United States v. Broncheau*, 597 F.2d 1260, 1263 (9th Cir. 1979) (citing *United States v. Dodge*, 538 F.2d 770, 786 (8th Cir. 1976);

Felix S. Cohen, Handbook of Federal Indian Law 3 (1942); *United States v. Indian Boy X*, 565 F.2d 585, 594 (9th Cir. 1977); *United States v. Lossiah*, 537 F.2d 1250, 1251 (4th Cir. 1976); *Azure v. United States*, 248 F.2d 335, 337 (8th Cir. 1957)); *see also Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995); *United States v. Lawrence*, 51 F.3d 150, 152 (8th Cir. 1995).

Lack of enrollment in a tribe does not necessarily preclude a finding that the defendant was an Indian. *Broncheau*, 597 F.2d at 1262-63; *Ex parte Pero*, 99 F.2d 28, 31 (7th Cir. 1938). Determinative factors in *Pero* were (1) the defendant's parents were Indians, recognized as such, and maintained tribal relations, and (2) the defendant lived on the reservation, maintained tribal relations, and was recognized as an Indian. *Pero*, 99 F.2d at 31. The *Pero* court reasoned that the tribe's refusal to enroll the defendant because he allegedly belonged to another tribe was indirect evidence that the defendant was indeed an Indian. *Id.*

One district court astutely observed the second "recognition" prong of the *Rogers* test "probes whether the Native American has a sufficient non-racial link to a formerly sovereign people." *St. Cloud v. United States*, 702 F. Supp. 1456, 1461 (D.S.D. 1988). The *St. Cloud* court articulated factors for a court to consider in deciding if a defendant has satisfied the *Rogers* "recognition" prong. *St. Cloud*, 702 F. Supp. at 1461.

> In declining order of importance, these factors are: 1) enrollment in a tribe; 2) government recognition formally and informally through providing the person assistance reserved only to Indians; 3) enjoying benefits of tribal affiliation; and 4) social recognition as an Indian through living on a reservation and participating in Indian social life. These factors do not establish a precise formula for determining who is an Indian. Rather, they merely guide the analysis of whether a person is recognized as an Indian.

*St. Cloud*, 702 F. Supp. at 1461 (footnote omitted).

The *St. Cloud* court determined the defendant in that case would normally satisfy the "recognition" prong. *Id.* at

1462. But because the tribe in which the defendant was enrolled had been terminated by act of Congress, there was no federally recognized tribal relationship on which jurisdiction could be based. *Id.* at 1465-66. Thus, the *St. Cloud* court concluded the defendant did not fall under federal jurisdiction. *Id.* at 1466.

Here, the State relies heavily on two Ninth Circuit cases, *LaPier v. McCormick*, 986 F.2d 303 (9th Cir. 1993), and *United States v. Heath*, 509 F.2d 16 (9th Cir. 1974). The *LaPier* court reasoned it need not apply the *Rogers* test if a defendant fails to show the tribe of claimed connection is acknowledged by the federal government. *LaPier*, 986 F.2d at 304-05. Moreover, the *LaPier* court, relying on its earlier decision in *Heath*, stated: "A defendant whose only claim of membership or affiliation is with an Indian group that is not a federally acknowledged Indian tribe cannot be an Indian for criminal jurisdiction purposes." *Id.* at 305 (citing *Heath*, 509 F.2d at 19).

The *LaPier* court based its reasoning on the special relationship between the federal government and federally recognized tribes. *LaPier*, 986 F.2d at 305. Federal laws granting distinctive treatment for Indians is grounded not in recognition of the racial status of Indians generally but in the unique legal status of Indian tribes. *Id.* at 305. "Thus, the special federal role in regulating the tribes as ' "a separate people" with their own political institutions' is the foundation for federal criminal jurisdiction over Indians in Indian country." *Id.* at 305 (quoting *United States v. Antelope*, 430 U.S. 641, 646, 97 S. Ct. 1395, 51 L. Ed. 2d 701 (1977)).

We decide these federal authorities are persuasive. Consequently, a person claiming to be an Indian for purposes of criminal jurisdiction must show (1) that he is an Indian in the racial sense, and (2) that he is enrolled or affiliated with a tribe that is recognized by the United States and is individually subject to United States jurisdiction. *LaPier*, 986 F.2d at 305-06; *Broncheau*, 597 F.2d at 1263; *Pero*, 99 F.2d at 31; *St. Cloud*, 702 F. Supp. at 1461.

Here, Mr. Daniels has clearly established that he is an Indian in the racial sense; his Canadian nationality does not divest him of his racial identity. And, to a limited degree, the United States recognizes the racial status of Canadian Indians; the Jay Treaty of 1794 confers upon "American Indians born in Canada" the right "to pass the borders of the United States" without being subject to immigration laws. 8 U.S.C. § 1359; *Akins v. Saxbe*, 380 F. Supp. 1210, 1212-13 (D. Me. 1974). Consequently, we hold Mr. Daniels has established the first prong of the *Rogers* test.

But the fact that Mr. Daniels is an Indian in the racial sense does not establish federal jurisdiction; he must also show a sufficient connection with a tribe recognized by the United States. *LaPier*, 986 F.2d at 305-06; *St. Cloud*, 702 F. Supp. at 1461. A proper starting point for making that determination is to consult the BIA's list of federally recognized tribes published in the *Federal Register*. *LaPier*, 986 F.2d at 305. At the relevant time, the BIA list appeared at 63 Fed. Reg. 71,941 (1998).

Mr. Daniels claims to be part Chippewa and "Mississippi Sioux." He further claims his grandparents belonged to the "Aberdeen Band." The BIA list of tribes contains numerous Chippewa tribal entities, none of which Mr. Daniels has identified as the specific band with which he claims an affiliation. Of the many listed Sioux entities, none of them are called "Mississippi Sioux." The list contains no reference to the "Aberdeen Band."

Mr. Daniels' argument is supported merely by Garry Standing's written statement that he believed Tom Standing was "registered" at the Devils Lake Sioux Tribe. The federally recognized Spirit Lake Tribe, located in North Dakota, was formerly known as the Devils Lake Sioux Tribe. 63 Fed. Reg. 71,944. Thus, at most, the record shows by hearsay that Mr. Daniels' grandfather may have been enrolled in or affiliated with a recognized American tribe. Even if true, that does not mean Mr. Daniels is affiliated with the tribe for purposes of jurisdiction. Mr. Daniels has not shown the Spirit Lake Tribe recognizes him as a

member. He does not claim membership in the Spirit Lake Tribe or received any membership benefits from it. Mr. Daniels has not even alleged setting foot there.

Mr. Daniels has also alleged that the Colville Tribe has recognized him as an Indian and has provided him with services and privileges because he is an Indian. But Mr. Daniels has not produced any evidence to substantiate his claim. There is no documentation in the record connecting Mr. Daniels to the Colville Tribe. No one from the tribe testified as to Mr. Daniels' interaction with or acceptance by the Colvilles. Mr. Daniels testified that he lived on the reservation for merely a month.

All considered, we conclude, as did the trial court, that Mr. Daniels did not produce sufficient evidence that he is affiliated with a recognized American Indian tribe. And, bare allegations of an affiliation with a tribe are insufficient to raise a doubt as to State jurisdiction. *L.J.M.*, 129 Wn.2d at 396. "The State's burden to prove jurisdiction, therefore, remained unchanged, and it could rely on its showing that the alleged crime occurred" in Washington "to establish that the case fell within the jurisdiction of the Okanogan County Superior Court." *Id.*

Accordingly, we conclude Mr. Daniels' status as a Canadian Indian under these circumstances does not provide a basis for him to resist state court jurisdiction.

## CONCLUSION

We hold the trial court did not err when denying Mr. Daniels' dismissal motion and deciding he failed in his burden of contesting state court jurisdiction.

Affirmed.

KURTZ, C.J., and TOMPKINS, J. Pro Tem., concur.