34 P.3d 912 (2001)
109 Wash.App. 244
STATE of Washington, Respondent,
v.
Michael James BOYD, Sheldon Lee Pakootas, Appellants.
Nos. 18571-1-III, 18669-5-III.
Court of Appeals of Washington, Division 3, Panel Three.
November 20, 2001.
*913 Maryann C. Moreno, Paul J. Wasson, Spokane, for appellants.
Stephen T. Graham, Deputy Prosecuting Atty., Republic, for respondent.
SWEENEY, J.
State courts have criminal jurisdiction over Indian tribal members, except for crimes committed on tribal trust land or allotted land.[1] The trial court here concluded as a matter of law, based upon well-supported findings of fact, that the crimes committed by Michael James Boyd and Sheldon Lee Pakootas were neither on tribal trust land nor allotted land. We accordingly affirm the court's conclusion that the State proved jurisdiction.

FACTS
The State charged Michael Boyd and Sheldon Pakootas with a variety of felonies committed during an attack on campers at the Rogers Bar Campground. The campground is within the geographical boundary of the Colville Indian Reservation. But it is also included within federal Bureau of Reclamation land which was condemned as part of the Grand Coulee Dam project.
Each defendant moved to dismiss the information for lack of subject matter jurisdiction. Mr. Boyd and Mr. Pakootas claimed they were members of the Colville Confederated Tribesa claim not seriously disputedand further that the campground was within the geographical boundary of the Colville Indian Reservation. They claimed, therefore, to be outside the State's criminal jurisdiction pursuant to RCW 37.12.100.[2] That statute removes from state jurisdiction land that is both on the Reservation and either trust land or land otherwise subject to restrictions against alienation.
The State responded that the United States government had acquired everything below elevation 1,310 feet to contain Lake Roosevelt as part of the Grand Coulee Dam project. The campground was not, therefore, located on either trust land or allotted land. Nor was it otherwise subject to restriction against alienation. And the State therefore had jurisdiction.
The court held a hearing on the jurisdiction question. David R. Finley of the Colville Tribes Parks and Recreation Department *914 and a commissioned tribal officer testified for the State as to elevation. Mr. Boyd and Mr. Pakootas challenged his credentials but agreed that the State could present additional post-hearing affidavits that the campground was located below 1,310 feet. Without conceding the point, Mr. Boyd and Mr. Pakootas accepted for the sake of argument that the campground was below 1,310 feet. The legal question was whether 1,310 feet marks the limit of the State's criminal jurisdiction. They argued that, even if the crime scene was below the 1,310-foot mark, criminal jurisdiction was federal, not state. This was because the United States and the Tribes had signed a cooperative agreement for the management of the lake and shoreline natural resources. Mr. Boyd and Mr. Pakootas argued that the agreement was analogous to a trust that constituted a restriction on alienation by the United States. The trial judge rejected these arguments.
The court announced it would rule that the State had jurisdiction as a matter of law, provided the prosecutor produced additional admissible proof that the elevation of the campground was within the boundary of the federal fee land, that is, land taken as part of the Grand Coulee Dam project.
James R. Orwin, Acting Superintendent of the Colville Indian Agency, filed an affidavit which included the legal description of the campground and confirmed that it was owned by the United States Bureau of Reclamation. The court also admitted a Department of the Interior geological survey elevation map and an aerial photograph showing the location of the campground. The trial court eventually entered written findings that the campground was inside the reservation, but owned by the United States government, and neither tribal nor allotted lands held in trust or subject to any restriction on alienation.
The court then concluded that it had jurisdiction.
On April 21, 1999, the State filed the affidavit of Dan Guptill, a civil engineer with the Bureau of Reclamation. Mr. Guptill stated that the campground was below the 1,310-foot mark. He also showed that the Unite States government fee property extended above the 1,310-foot mark in the area around the campground. Mr. Guptill's affidavit was supported by a section of a United States Interior Department topographical map. On the same date, Mr. Boyd pleaded guilty to the charges as amended. Mr. Pakootas pleaded guilty to amended charges on July 6, 1999.
The court entered judgment and sentence for both Mr. Boyd and Mr. Pakootas on July 6, 1999.

APPELLATE REVIEW
We begin by commenting on the procedural posture of this case.
No appeal is ordinarily permissible following a guilty plea because the plea constitutes a waiver of the right to appeal. Young v. Konz, 88 Wash.2d 276, 283, 558 P.2d 791 (1977). A motion to withdraw a guilty plea is generally made to the trial court. CrR 4.2(f). Such a motion would be governed by CrR 7.8 if filed after entry of judgment. CrR 4.2(f). The trial court can grant a motion to vacate the judgment on the ground that the judgment is void. CrR 7.8(b)(4). And any judgment entered without jurisdiction is void. Wesley v. Schneckloth, 55 Wash.2d 90, 93-94, 346 P.2d 658 (1959). Such a motion here would have provided a vehicle for the additional assurances of jurisdiction which these defendants now seek.
That aside, a guilty plea does not preclude a challenge to the jurisdiction of the court. State v. Majors, 94 Wash.2d 354, 356, 616 P.2d 1237 (1980).
Neither does the invited error doctrine. Generally, Washington strictly applies the doctrine of invited error to prohibit parties from setting up an error at trial and then complaining of it on appeal. State v. Wakefield, 130 Wash.2d 464, 475, 925 P.2d 183 (1996). This applies to error of whatever kind, even if the error is of constitutional magnitude. State v. Henderson, 114 Wash.2d 867, 870, 792 P.2d 514 (1990). The doctrine does not, however, apply to jurisdictional challenges.
*915 The State does not acquire criminal jurisdiction either by estoppel or by stipulation. And the defendant does not waive the issue by failing to challenge jurisdiction at the time of plea or sentencing. White v. Schneckloth, 56 Wash.2d 173, 174, 351 P.2d 919 (1960). If, as Mr. Boyd and Mr. Pakootas argue, the jurisdictional facts remained in dispute, then they should have been resolved before the trier of fact. State v. L.J.M., 129 Wash.2d 386, 392, 918 P.2d 898 (1996).
A review of the record makes it clear beyond argument, however, that the dispute here involves a question of law whether the State made a sufficient threshold showing of territorial jurisdiction. Territorial jurisdiction is decided as a question of law if the material facts are undisputed. State v. Squally, 132 Wash.2d 333, 340, 937 P.2d 1069 (1997).

JURISDICTION
The superior court has original jurisdiction in all criminal felony cases, and in all proceedings in which jurisdiction has not been vested exclusively in some other court. WASH. CONST., art. IV, § 6. The federal courts have exclusive jurisdiction to try an enrolled Indian for the alleged commission, in Indian country, of most major crimes. White, 56 Wash.2d at 174, 351 P.2d 919.
STANDARD OF REVIEW
Here, both Mr. Boyd and Mr. Pakootas conceded for the purposes of the jurisdictional hearing that the campground was below the 1,310-foot mark on federal land. Report of Proceedings (RP) at 23, 24 (Mr. Boyd); RP at 21-22 (Mr. Pakootas). And nothing in the record suggests that the State contested their tribal membership. The essential facts are then uncontested. And the trial court decided jurisdiction as a matter of law. Our review is then de novo. Squally, 132 Wash.2d at 340, 937 P.2d 1069.
BURDEN OF PROOF
Mr. Boyd and Mr. Pakootas contend that, by asserting Indian heritage and establishing that the crime took place within the geographical boundary of the reservation, they created a burden on the State to prove jurisdiction beyond a reasonable doubt at the pretrial hearing. And the State failed to meet this burden.
The burden of proof of subject matter jurisdiction shifts as follows:
1. The State always has the burden of establishing jurisdiction beyond a reasonable doubt. But merely by alleging that the crime took place in Washington, the State met this burden. RCW 9A.04.030(1); L.J.M., 129 Wash.2d at 392, 918 P.2d 898.
2. To overcome this presumption, the defendant need only point to evidence of facts which, if proved, would defeat jurisdiction. L.J.M., 129 Wash.2d at 394-95, 918 P.2d 898.
3. The State must then come forward with a prima facie showing of additional jurisdictional facts sufficient to refute the defense's theory and satisfy the court that it has jurisdiction. Id. at 395, 937 P.2d 1069.
4. If the defense fails to convince the court that jurisdiction is questionable, the State can rest on its initial showing that the crimes occurred within the state. Id. at 388, 396, 937 P.2d 1069.
5. If, however, the court remains in doubt as to its jurisdiction, then the jurisdictional facts become an element of the crime to be decided by the finder of fact in the event of a trial. The State must prove the jurisdictional facts by the usual standard of beyond reasonable doubt. Id. at 393, 937 P.2d 1069.
STATE'S CRIMINAL JURISDICTION
Here, as in L.J.M., it was not disputed at the jurisdictional hearing that Mr. Boyd and Mr. Pakootas were of Indian heritage. The State makes an issue of this for the first time in its responding brief. The entire hearing was, however, predicated upon a jurisdictional challenge assuming Indian heritage. At that stage, Mr. Boyd and Mr. Pakootas were required only to point tonot to prove facts that would defeat jurisdiction. See L.J.M., 129 Wash.2d at 394-95, 918 P.2d 898. The State made no effort to refute the heritage allegation. And the crime scene was inside the geographical boundary of the Colville *916-926 Indian Reservation. See id. at 395, 918 P.2d 898.
Mr. Boyd and Mr. Pakootas failed, however, to point to any evidence that the campground was within the Tribes' jurisdictional boundary. To do this, they would have had to show that the campground was either trust land or allotted lands. RCW 37.12.010;[3]L.J.M., 129 Wash.2d at 395, 918 P.2d 898. They offered no evidence that it was either.
The State's criminal jurisdiction extends across the geographical boundary of the reservation except for tribal trust land and allotted lands. RCW 37.12.010; State v. Cooper, 130 Wash.2d 770, 775-76, 928 P.2d 406 (1996). Land owned by the United States in fee simple is excluded from tribal jurisdiction as a matter of law. Somday v. Rhay, 67 Wash.2d 180, 184, 406 P.2d 931 (1965).
Mr. Boyd and Mr. Pakootas stipulated, subject to the production of additional proof by the State, that the campground was below 1,310 feet. They also provisionally conceded that everything below the 1,310-foot mark was owned by the federal Bureau of Reclamation as part of the Grand Coulee Dam project. RP at 22-23. They produced no evidence and did not contend that the campground was on tribal trust or allotted land as contemplated by RCW 37.12.010.
COOPERATIVE MANAGEMENT AGREEMENT
Instead, Mr. Boyd and Mr. Pakootas challenged the State's jurisdiction on a legal theory that some sort of constructive trust or constructive restriction on alienation was created by a cooperative management agreement between the federal government and the Tribes for the management of the lake and shoreline. The cooperative management agreement between the federal government and the Tribes was just that an agreement under which the Tribes would manage portions of the lake and shoreline. Clerk's Papers (No. 18571-1-III) at 31. The agreement recognizes the unique relationship between the tribal people and the land. It is, however, subject to the right of the Bureau of Reclamation to accomplish the purposes of the Grand Coulee Dam project. The agreement contains no indication that jurisdiction is to revert back to the Tribes in the event the purposes of the project cease to be of interest to the government.
The record contains substantial evidence to support the court's finding that the campground was on federal land. And those findings support its conclusion that the State met its burden and proved jurisdiction.
We affirm.
WE CONCUR: BROWN, A.C.J. and SCHULTHEIS, J.
NOTES
[1] Title to trust land is held by the federal government in trust for the Indian tribe as a community. Title to allotted land is held by individual tribe members, also in trust for the community, and subject to restrictions against alienation by the holders. Somday v. Rhay, 67 Wash.2d 180, 184, 406 P.2d 931 (1965).
[2] "It is the intent of the legislature to authorize a procedure for the retrocession, to the Quileute Tribe, Chehalis Tribe, Swinomish Tribe, Skokomish Tribe, Muckleshoot Tribe, Tulalip Tribes, and the Colville Confederated Tribes of Washington and the United States, of criminal jurisdiction over Indians for acts occurring on tribal lands or allotted lands within the Quileute, Chehalis, Swinomish, Skokomish, Muckleshoot, Tulalip, or Colville Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States." RCW 37.12.100.
[3] "The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States [with certain non-germane exceptions]." RCW 37.12.010 (emphasis added).